[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY NO. 167)
The plaintiff, Joseph Clemente, alleges the following facts in the revised complaint. The defendant, Oronoque Golf, LLC (Oronoque) operates a golf, restaurant and catering facility in Stratford, Connecticut, known as the Oronoque Country Club (club) During 1997, the plaintiff applied for membership in the club and was told by one of its employees that he could not do so. During the spring of 1997, several members of the club invited the plaintiff to attend social events at the club and were told by club employees that the plaintiff would not be allowed to attend. The club's manager then told the plaintiff that he was barred from the premises for ninety-nine years. Oronoque's attorney told the plaintiff that Oronoque had entered into an agreement with the other defendants, Vincent Sorrentino and Joseph Tartagani, which included a provision that the plaintiff was barred from entering the premises for any purpose. The plaintiff contends that Oronoque continues to bar him from the club's premises.
The parties allege the following additional facts. At one time, the plaintiff, Sorrentino and Tartagani owned the club. As a result of litigation between these individuals, they entered into a stipulation in 1993, pursuant to which Sorrentino and Tartagani assumed ownership of the club in exchange for providing the plaintiff with monetary consideration in the amount of $1,700,000. In the stipulation, the parties also agreed that the plaintiff would "cease to be a member of the [club] . . . [and] shall remove himself from the premises thereof and shall refrain thereafter from going on the premises." (Plaintiff's Memorandum, Addendum A.) In 1997, Sorrentino and Tartagani sold the club to Oronoque.
The plaintiff's revised complaint contains three counts, all of which allege that the defendants violated the Connecticut Antitrust Act, General Statutes § 35-24 et seq. In count one, the plaintiff asserts that Oronoque's conduct in barring him from entering its premises, attending functions at the club and interacting with club members constitutes a violation of General Statutes § 35-28(d). Count two is directed against all three defendants. The plaintiff asserts therein that Oronoque, Sorrentino and Tartagani conspired together to enforce the provision barring the plaintiff from the club's premises after Sorrentino CT Page 14985-w and Tartagani sold the club to Oronoque and that their agreement to do so violates General Statutes § 35-26. In count three, the plaintiff asserts that Sorrentino and Tartagani's conduct also constitutes a violation of General Statutes § 35-28(d).
On June 30, 2000, Oronoque moved for summary judgment on the causes of action asserted against it in counts one and two of the revised complaint to which the plaintiff objected.
Practice Book § 17-49 provides that
 Judgment . . . shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show no genuine that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
The party seeking summary judgment has the burden of showing the absence of any genuine issue of material fact which, under applicable principles of substantive law, entitle him to a judgment as a matter of law and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Witt v.St. Vincent's Medical Center, 252 Conn. 363, 368, 746 A.2d 753 (2000) A party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. Maffucci v. RoyalPark Ltd. Partnership, 243 Conn. 552, 554-55, 707 A.2d 15 (1998). It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court in support of a motion for summary judgment. Id.
In count one, the plaintiff alleges that Oronoque's conduct violates General Statutes § 35-28(d) because Oronoque refuses to deal with the plaintiff or has coerced, persuaded or induced others to refuse to deal with him and does not treat the plaintiff's competitors in the same manner. Oronoque argues that it is entitled to summary judgment on count one on the grounds that (1) the plaintiff cannot show that Oronoque's conduct had an anti-competitive effect; (2) the plaintiff cannot prove that he suffered an antitrust injury; (3) the plaintiff cannot show that Oronoque's conduct was an unreasonable restraint on competition; and, (4) the plaintiff failed to comply with the service provision of General Statutes § 35-37.[1] The plaintiff responds that he owns and CT Page 14985-x operates a restaurant, catering and banquet services. He claims that as a result of Oronoque's conduct, he has lost business opportunities which are "not insubstantial." He alleges that the defendants engaged in a concerted refusal to deal, which he characterizes as a per se violation of § 35-28(d), and thus he is not required to provide evidence that Oronoque's conduct was an unreasonable restraint on competition. In addition, the plaintiff alleges that his failure to comply with the service provision of § 35-37 does not constitute grounds for summary judgment, and that, as of the date he filed his memorandum in opposition to the motion for summary judgment, he complied with this provision.
Under the Connecticut Antitrust Act, "[e]very contract, combination, or conspiracy in restraint of any part of trade or commerce is unlawful." General Statutes § 35-26. Section 35-28 provides in pertinent part, "every contract, combination, or conspiracy is unlawful when the same are for the purpose, or have the effect, of . . . (d) refusing to deal, or coercing, persuading, or inducing third parties to refuse to deal with another person." As noted by the Connecticut Supreme Court, the Connecticut Antitrust Act was intentionally patterned after the antitrust law of the federal government. Therefore, construction of the Connecticut Antitrust Act is aided by reference to judicial opinions interpreting the federal antitrust statutes. Accordingly, our courts follow federal precedent when we interpret the act unless the text of our antitrust statutes, or other pertinent state law, requires us to interpret it differently. Westport Taxi Service, Inc. v. Westport Transit District,235 Conn. 1, 15-16, 664 A.2d 719 (1995).
Section 35-28(d) has no specific counterpart in the federal antitrust laws, but rather, it is considered to be a codification of what have come to be known as "per se" violations of the Sherman Act, notably § 1.Elida, Inc. v. Harmor Realty Corp., 177 Conn. 218, 227, 413 A.2d 1226
(1979). In general, federal courts apply one of two standards in determining whether a party's conduct violates the Sherman Antitrust Act; the rule of reason or the per se concept. Id., 225. As under the Sherman Act, the "rule of reason" was intended to be the prevailing standard to be applied for the purpose of determining whether a particular act had or had not brought about the wrong against which the statute provided in a given case. "Per se" rules of illegality should be applied only to conduct which is shown to be "manifestly anti-competitive." Id., 230-31. Elida further states:
 . . . area of per se violations is carefully limited . . . it can be stated generally that the following are recognized as `per se' violations of the federal act: CT Page 14985-y (1) price fixing . . . (2) agreements among competitors to divide markets or allocate customers . . . (3) certain tying arrangements . . . and (4) group boycotts." Id., 227-28.
Although a party's concerted refusal to deal may constitute a per se
violation of antitrust law, courts have limited the circumstances in which such a violation will be found. Id., 228; see also Catrone v. OgdenSuffolk Downs, Inc., 683 F. Sup. 302, 307 (D. Mass. 1988). Cases involving refusals to deal which have been deemed illegal per se have been instances in which the refusal to deal is utilized to implement aper se illegal restraint of trade, such as price fixing, conspiracy to eliminate discounters, or horizontal conspiracy to allocate markets.Catrone v. Ogden Suffolk Downs, Inc., supra, 683 F. Sup. 307. Here, although the plaintiff alleges that Oronoque's conduct in refusing to deal with him and in inducing others to do likewise is a per se violation of § 35-28(d), he does not provide any evidence that Oronoque utilized this conduct to implement a per se illegal restraint of trade. To the contrary, Oronoque provided documentary evidence in which the plaintiff admits that Oronoque did not commit any acts of price fixing, did not enter into any agreements with competitors to divide markets or customers, did not enter into any tying agreements that would be considered a per se violations of the federal act and that the defendant's conduct toward him was not part of any group boycott. (Oronoque's Memorandum, Exhibit D, pp. 3-4.) Consequently, the court must apply the rule of reason standard to Oronoque's conduct.
Under this standard, "the actual impact of particular arrangements on competition must be examined to determine whether they have a pernicious effect on competition and lack . . . any redeeming virtue." Elida, Inc.v. Harmor Realty Corp., supra, 177 Conn. 231. Under the rule of reason, the antitrust plaintiff bears the initial burden of showing that the challenged action has had an actual adverse effect on competition as a whole in the relevant market. Capital Imaging Associates, P.C. v. MohawkValley Medical Associates, Inc., 996 F.2d 537, 543 (2d Cir. 1993) cert. denied, 510 U.S. 947, 114 S.Ct. 388, 126 L.Ed.2d 337 (1993); see alsoSantiago v. Connecticare, Inc., Superior Court, judicial district of Hartford at Hartford, Docket No. 704032 (December 12, 1995, Corradino,J.). To merely prove it has been harmed as an individual competitor is insufficient. Id. Proof that the defendant's activities had an impact upon competition in a relevant market is an absolutely essential element of the rule of reason case. Hayden Publishing Co. v. Cox BroadcastingCorp., 730 F.2d 64, 69-70 (2d Cir. 1984). In Federal Paper Board Co. v.Amata, 693 F. Sup. 1376. 1382 (D.Conn. 1988), that court said:
 "[E]very antitrust suit should begin by identifying the CT Page 14985-z ways in which a challenged restraint might possibly impair competition. This step occasionally reveals that competition is not implicated at all and thus that the parties' dispute is not an antitrust case." (Internal quotation marks omitted.)
In this case, Oronoque's conduct has the effect of keeping the plaintiff from entering the premises of a private golf club. Oronoque presented evidence that it is not in competition with the plaintiff and did not gain any competitive advantage as a result of barring him from its premises. (Oronoque's Memorandum, Exhibit A, p. 2.) Furthermore, the evidence indicates that the plaintiff stated that he "does not intend to introduce `reports or market analysis' to support it's claim of injury." (Oronoque's Memorandum, Exhibit D, p. 6.) On the other hand, the plaintiff does not offer any evidence to meet his initial burden of showing the actual detrimental effects of Oronoque's conduct on the services the plaintiff offers. Instead, he merely states that the defendants' conduct has caused him to lose business opportunities. (Plaintiff's Memorandum, Affidavit of Joseph N. Clemente.) Mere allegations of loss of individual competitive ability are not sufficient. There must be some allegation of public injury to competition; a harmful effect on a more generalized market and not merely on a single supplier or purchaser. Blaine v. Meineke Discount MufflerShops, Inc., 670 F. Sup. 1107, 1114 (D.Conn. 1987). Such allegations are essential because the antitrust laws were enacted to protect competition, not competitors. Retail Service Associates v. ConAgra PetProducts Co., 759 F. Sup. 976, 979-80 (D.Conn. 1991), citing BrunswickCorp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488, 97 S.Ct. 690,50 L.Ed.2d 701 (1977). The Sherman Act directs itself not against conduct which is competitive, even severely so, but against competition which unfairly tends to destroy competition itself. It does so not out of solitude for private concerns, but out of concern for the public interest. Heath v. Micropatent, judicial district of New Haven at New Haven, Docket No. 401481, (December 30, 1999, Silbert, J.) citingSpectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 458, 113 S.Ct. 884,122 L.Ed.2d 247 (1993). Thus, it is clear that if a defendant's conduct results merely in reducing the competitive ability of only one company, as is alleged here, the injury is insufficient unless the plaintiff offers evidence of how the conduct injures the public. Summary judgment is properly granted against a plaintiff who fails to offer evidence to meet this burden. Santiago v. Connecticare, Inc., supra, Superior Court, Docket No. 704032. Moreover, the plaintiff's affidavit contains only conclusory assertions that the plaintiff's business suffered a loss. Conclusory assertions "[do] not constitute sufficient evidence to CT Page 14985-aa establish the existence of a disputed material fact for purposes of a motion for summary judgment." Hoskins v. Titan Value Equities Group,Inc., 252 Conn. 789, 793-94, 749 A.2d 1144 (2000). For these reasons, the court is required to grant Oronoque's motion for summary judgment on count one of the revised complaint.
In count two of the revised complaint, the plaintiff alleges that the defendants conduct in barring him from becoming a member of the club and utilizing the club's facilities, imposes an injury to the public and is prejudicial to the public good, in violation of General Statutes §35-26. As stated above, § 35-26 provides that, "Every contract, combination, or conspiracy in restraint of any part of trade or commerce is unlawful." "Section 35-26 is substantially identical to § 1 of the Sherman Act; 15 U.S.C. § 1; and applies to contracts, combinations, or conspiracies in restraint of trade or commerce. . . . The essence of a violation of § 1 of the Sherman Act is concerted action." (Citation omitted.) Shea v. First Federal Savings Loan Assn. of New Haven,184 Conn. 285, 305, 439 A.2d 285 (1981). The analysis applied to count one is applicable to count two; therefore, this court must grant Oronoque's motion for summary judgment on the cause of action asserted against it in count two of the revised complaint.
Accordingly, the court hereby grants Oronoque's motion for summary judgment.
MELVILLE, J.