[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO STRIKE (#117)
The question before the court is whether to grant the plaintiff's motion to strike the defendant's amended third and eighth counterclaims for failure to state a claim upon which relief can be granted.
 FACTS
The plaintiff, Hendriks Associates, LLC, filed the amended complaint in this action on August 24, 1998. The complaint contains five counts alleging respectively: (1) breach of a written contract; (2) breach of an oral contract; (3) quantum meruit; (4) unjust enrichment; and (5) violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. Each of the counts arises from the defendant's alleged failure to pay for engineering and land surveying services performed by the plaintiff.
The defendant, Old Lyme Marina, Inc., filed a revised answer, special defenses and counterclaims on February 9, 1999. The defendant, in the CT Page 5293 third counterclaim, alleged the following facts. The plaintiff and defendant entered into two written contracts on February 6, 1997 and April 29, 1997 respectively. Under the contracts, the plaintiff agreed, inter alia, to provide the necessary architectural, mechanical and foundation plans for the erection of a storage building on the defendant's property. The plaintiff represented that it had the knowledge, skill and ability to perform all the work set forth in the contracts. The defendant further alleged that the plaintiff breached the implied covenant of good faith and fair dealing in one or more of the following ways: by failing to provide plans in compliance with the state building and fire codes and town ordinances; by committing design errors resulting in cost overruns and work that had to be redone; by failing to inform the defendant that a special inspector was required to be present during borings, resulting in cost overruns and a second set of borings; and in failing to inform the defendant of extra costs imposed by the building codes on buildings over 5,000 square feet.
In the eighth counterclaim, the defendant repeated the basic allegations of the third counterclaim, and made the following additional allegations. As inducement to enter into the contracts, the plaintiff made various innocent misrepresentations to the defendant. The defendant relied on those misrepresentations to its detriment. The defendant further alleged that the plaintiff's acts and omissions constituted unfair or deceptive acts or practices in violation of CUTPA.
On June 5, 2000, the plaintiff filed a motion to strike the third and eighth counterclaims. The court, Martin, J., granted the motion to strike on November 22, 2000. The court held that the allegations of the third counterclaim did "not allege that the plaintiff was prompted by an interested or sinister motive in its failure or neglect to fulfill its contractual obligations" and that "the allegations sound in negligence in that they set forth what the plaintiff failed to do or what the plaintiff did incorrectly." Hendriks Associates v. Old Lyme Marina, Superior Court, judicial district of New London at New London, Docket No. 546496 (November 22, 2000, Martin, J.). As to the eighth counterclaim, the court held that "[a]n allegation of innocent misrepresentation can amount to a CUTPA violation so long as the cigarette rule is satisfied" and that "[t]he defendant's allegations fail to satisfy any of the criteria of the cigarette rule." Id.
On November 30, 2000, the plaintiff filed amended third and eighth counterclaims. The amended third counterclaim is substantially identical to the stricken third counterclaim, with the addition of an allegation that "[t]he plaintiff was prompted by an interested or sinister motive to misrepresent its knowledge, skills and capabilities in order to induce the defendant to contract with and pay the plaintiff." In the amended CT Page 5294 eighth counterclaim, the defendant repeats the basic allegations of the previously stricken eighth counterclaim, and alleges in addition that the plaintiff's misrepresentations were made knowingly or recklessly. The defendant further alleges that "[t]he acts and omissions of the plaintiff violated Connecticut public policy and/or were unscrupulous, oppressive or unethical" in one or more of the following ways: (1) the plaintiff's plans did not comply with the state building and fire codes and town ordinances; (2) the plaintiff's misrepresentations resulted in construction designs that were substandard and unsafe and required corrective measures; and (3) the plaintiff continued to accept payments and compound its mistakes when it should have known that it lacked knowledge, skills and capabilities to perform the contracts and to comply with state and local laws. In addition, the plaintiff alleges that the acts or omissions of the plaintiff caused substantial consumer injury by misrepresenting its level of expertise, by committing design error which, if not corrected, would have resulted in an unsafe storage facility, and by causing cost overruns, delays and lost income.
The plaintiff now moves to strike the amended third counterclaim on the ground that the defendant has again failed to plead the elements of a claim for breach of the duty of good faith and fair dealing. The plaintiff also moves to strike the eighth counterclaim on the grounds that the defendant's claim falls outside the intended scope of CUTPA and that CUTPA is inapplicable to professional engineering and design services. The motion to strike is supported by a memorandum of law, and the defendant has filed a memorandum of law in opposition.
 DISCUSSION
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.)Faulkner v. United Technologies Corp., 240 Conn. 576, 580, 693 A.2d 293
(1997). "A motion to strike admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis in original; internal quotation marks omitted.) Id., 588.
 Amended Third Counterclaim
In support of its motion to strike the amended third counterclaim, the plaintiff argues that the defendant has again failed to plead sufficient CT Page 5295 facts to establish a claim for breach of the duty of good faith and fair dealing. Specifically, the plaintiff argues that the defendant's allegation that the plaintiff was prompted by an interested or sinister motive is nothing more than a legal conclusion, and that the remaining allegations of the third counterclaim are identical to those previously stricken by the court.
"Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." (Citation omitted; internal quotation marks omitted.) Gupta v. NewBritain General Hospital, 239 Conn. 574, 598, 687 A.2d 111 (1996). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." (Internal quotation marks omitted.) Habetz v. Condon, 224 Conn. 231,237, 618 A.2d 501 (1992).
The court, Martin, J., granted the previous motion to strike the third counterclaim because the allegations contained therein could not have supported a conclusion that the plaintiff acted with an interested or sinister purpose. The defendant's subsequent addition of the allegation that "[t]he plaintiff was prompted by an interested or sinister motive" amounts to a legal conclusion. "[O]ur rules of practice require fact pleading. See Practice Book § 10-1." Emerick v. Kuhn, 52 Conn. App. 724,749 n. 18, 737 A.2d 456, cert. denied, 249 Conn. 929, 738 A.2d 653, cert. denied, 528 U.S. 1005, 120 S.Ct. 500, 145 L.Ed.2d 386 (1999). The plaintiff has not pleaded any additional facts that would support a conclusion that the plaintiff's alleged acts amounted to more than mere negligence.
Several other judges of this court have likewise held that in order to properly plead a breach of the implied covenant of good faith and fair dealing, a party must do more than allege acts constituting negligence and add a bald conclusion that the acts were done with an interested or sinister purpose. See Amity Regional School District #5 v. AtlasConstruction Co., Superior Court, judicial district of Waterbury, Docket No. 153388 (August 15, 2000, McWeeny, J.); Trombley v. ConvalescentCenter of Norwich, Superior Court, judicial district of New London at New London, Docket No. 543772 (June 30, 1999, Martin, J.); Brouillard v.United Illuminating Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 418595 (June 1, 1999, Silbert, J.); Ryan v.Allstate Indemnity Co., Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 142573 (September 22, 1998, CT Page 5296D'Andrea, J.).
The defendant claims, however, that the amended third counterclaim sufficiently states a claim for breach of the implied covenant of good faith and fair dealing because of the allegation that the plaintiff made misrepresentations in order to induce the defendant to contract with the defendant. "It is axiomatic that the implied duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship. . . . The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term. . . . [T]he existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing." (Citations omitted; internal quotation marks omitted.) Hoskins v. Titan Value EquitiesGroup, 252 Conn. 789, 793, 749 A.2d 1144 (2000). The defendant's allegation that the plaintiff made misrepresentations as an inducement to contract therefore does not support a claim for breach of the implied covenant of good faith and fair dealing; until the parties actually entered into a contractual relationship, there was no such implied covenant. The amended third counterclaim should therefore be stricken.
 Amended Eighth Counterclaim
Turning to the amended eighth counterclaim, the plaintiff claims that the defendant has failed to plead a valid claim because CUTPA does not apply to professional engineering and design services such as those provided by the plaintiff. The plaintiff also claims that the defendant's allegations do not satisfy the "cigarette rule" adopted by our courts for analyzing the adequacy of CUTPA claims.
"The purpose of CUTPA is to protect the public from unfair practices in the conduct of any trade or commerce, and whether a practice is unfair depends upon the finding of a violation of an identifiable public policy. . . . CUTPA, by its own terms, applies to a broad spectrum of commercial activity. The operative provision of the act, [General Statutes] § 42-110b (a), states merely that [n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. Trade or commerce, in turn, is broadly defined as the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state. General Statutes 42-110a (4). The entire act is remedial in character . . . and must be liberally construed in favor of those whom the legislature intended to benefit." (Citations omitted; internal CT Page 5297 quotation marks omitted.) Willow Springs Condominium Assn., Inc. v.Seventh BRT Development Corp., 245 Conn. 1, 42, 717 A.2d 77 (1998).
The plaintiff argues that the defendant's amended eighth counterclaim is based on allegations amounting to professional malpractice, and that it therefore does not set forth a sufficient cause of action under CUTPA. In Haynes v. Yale-New Haven Hospital, 243 Conn. 17, 699 A.2d 964
(1997), our Supreme Court discussed the issue in the context of a CUTPA claim against a hospital and physician. The court concluded that "professional negligence-that is, malpractice-does not fall under CUTPA. Although physicians and other health care providers are subject to CUTPA, only the entrepreneurial or commercial aspects of the profession are covered, just as only the entrepreneurial aspects of the practice of law are covered by CUTPA." Id., 34. Likewise, in Beverly Hills Concepts,Inc. v. Schatz Schatz, Ribicoff Kotkin, 247 Conn. 48, 717 A.2d 724
(1998), the Supreme Court reaffirmed this principle as it applies to claims against attorneys. In that case, the court again concluded "that professional negligence-that is, malpractice-does not fall under CUTPA." (Internal quotation marks omitted.) Id., 79. The principle was extended to a licensed clinical psychologist in Rumbin v. Baez, 52 Conn. App. 487,727 A.2d 744 (1999).
The defendant argues, however, that the CUTPA exclusion for professional negligence, as established by the Supreme Court, does not extend to professions other than law and medicine. There is a split among Superior Court judges on the issue. A number of judges have held that the exclusion extends beyond the medical and legal fields to exempt other types of professional malpractice from CUTPA. See Worldwide PreservationServices, LLC v. IVth Shea, LLC, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 167154 (February 1, 2001,Tierney, J.) (29 Conn.L.Rptr. 7) (engineering); Stamford IHOP, Inc. v.Torello, Superior Court, judicial district of New Haven at New Haven, Docket No. 425893 (January 24, 2001, Thompson, J.) (engineering); AmityRegional School District #5 v. Atlas Construction Co., Superior Court, judicial district of Waterbury, Docket No. 153388 (July 26, 2000,McWeeny, J.) (27 Conn.L.Rptr. 605) (architecture); Day v. YaleUniversity School of Drama, Superior Court, judicial district of New Haven at New Haven, Docket No. 400876 (March 7, 2000, Licari, J.) (26 Conn.L.Rptr. 624) (education); Ann Fields of South Windsor v.Prestileo, Superior Court, judicial district of Hartford, Docket No. 569685 (August 25, 1999, Bishop, J.) (insurance); Shareamerica, Inc. v.Ernst Young, Superior Court, judicial district of Waterbury, Docket No. 150132 (July 2, 1999, Sheldon, J.) (accounting); Nacca v. Simione,Simione, Scillia Larrow, LLC, Superior Court, judicial district of New Haven, Docket No. 387221 (May 28, 1999, Jones, J.) (24 Conn.L.Rptr. 618) (accounting); Anderson v. Yale University, Superior Court, judicial CT Page 5298 district of New Haven, Docket No. 399373 (July 1, 1998, Hartmere, J.) (22 Conn.L.Rptr. 341) (journalism).
Other Superior Court judges have reasoned that a CUTPA count based on negligence in a profession other than law or medicine should survive a motion to strike because the appellate courts have not expressly extended the professional negligence exception. See Vuoso Enterprises, Inc. v.Department of Consumer Protection, Superior Court, judicial district of New Haven at Meriden, Docket No. 267844 (March 13, 2001,Robinson-Thomas, J.); Pollock v. Panjabi, Superior Court, judicial district of New Haven at New Haven, Docket No. 402199 (May 17, 2000,Levin, J.); Hopper v. Hemphill, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 171709 (May 10, 2000, Hickey,J.); Franco v. Mediplex Construction, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 390458 (March 22, 1999,Devlin, J.); Darien Asphalt Paving, Inc. v. Newtown, Superior Court, judicial district of New Britain, Docket No. 488078 (December 7, 1998,Nadeau, J.); Doe v. Julia Day Nursery, Inc., Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 062198 (November 16, 1998, Corradino, J.).
This court does not read the Haynes and Beverly Hills Concepts to be so limited. The Supreme Court stated in both cases that "professional negligence-that is, malpractice — does not fall under CUTPA."Beverly Hills Concepts, Inc. v. Schatz and Schatz, Ribicoff and Kotkin,
supra, 247 Conn. 79; Haynes v. Yale-New Haven Hospital, supra,243 Conn. 34. Furthermore, "[t]he purpose of CUTPA is to protect the public from unfair trade practices in the conduct of any trade or commerce. . . ." Willow Springs Condominium Assn., Inc. v. 7th BRTDevelopment Corp., supra, 245 Conn. 42. The purpose of CUTPA is not to provide an alternate, statutory basis for bringing a malpractice action. The Supreme Court's distinction between the entrepreneurial and other aspects of professional practice should therefore apply with equal force to professions other than law and medicine. For these reasons, this court concludes that the CUTPA exemption established in the Haynes and BeverlyHills Concepts cases extends to allegations of negligence in the provision of professional engineering and design services.
The motion to strike must therefore be granted if the facts alleged in the amended eighth counterclaim state a claim for professional negligence, rather than an unfair practice in the entrepreneurial aspects of the plaintiff's business. As discussed above, the amended eighth counterclaim repeats the allegations of breach of the implied covenant of good faith and fair dealing and adds allegations that the plaintiff misrepresented his level of skill. The court has already determined above that the amended third counterclaim relating to good faith and fair CT Page 5299 dealing alleges nothing more than negligence. The defendant argues, however, that the allegations of misrepresentation sufficiently state a claim under CUTPA.
In Haynes v. Yale-New Haven Hospital, supra, 243 Conn. 17, the plaintiff argued that the defendant hospital held itself out as a "major trauma center," but failed to live up to the standards required of such a center. Id., 38. The plaintiff in that case attempted to characterize its claim as a CUTPA claim based on misrepresentation. The Supreme Court held that such allegations in reality constitute nothing more than a claim of professional negligence: "By holding itself out as a major trauma center . . . [the hospital] was representing to the public that it would meet the applicable standards of competency for a major trauma center. We conclude that this representation is simply what all physicians and health care providers represent to the public-that they are licensed and impliedly that they will meet the applicable standards of care. If they fail to meet the standard of care and harm results, the remedy is not one based upon CUTPA, but upon malpractice." Id., 39. The same reasoning applies here. The defendant cannot convert its professional negligence claim into a CUTPA claim simply by dressing it up as a misrepresentation claim. Consequently, the amended eighth counterclaim must be stricken.
 CONCLUSION
The defendant's statement in the amended third counterclaim that the "plaintiff was prompted by an interested or sinister motive" is a legal conclusion unsupported by the facts alleged. Furthermore, the allegations in the amended eighth counterclaim constitute nothing more than a claim for professional negligence. For these reasons, the plaintiff's motion to strike is granted in full.
Robaina, J.